THE TEUTONIA LIFE INSURANCE CO. OF CHICAGO

*v.*

ANNA BECK.

| 74 | 165 |
| 90a | 446 |
| 74 | 165 |
| 201 | 263 |

1. NEW TRIAL — *circuit judge should award when verdict is against the weight of evidence.* A circuit judge, who tries a case and sees the witnesses on the stand, has superior opportunities of estimating the value of the evidence, and the principal responsibility for the correctness of the verdict is upon him, and if the verdict is against the weight of the evidence, it is his duty to award a new trial.

2. ERROR *will not always reverse.* Even though evidence not strictly admissible is introduced, yet if the court can see that such evidence could not have misled the jury, and that their verdict is right, independent of such evidence, the judgment will not be reversed.

APPEAL from the Circuit Court of Cook county; the Hon. LAMBERT TREE, Judge, presiding.

Messrs. BARBER & LACKNER, for the appellants.

Mr. A. E. GUILD, JR., and Mr. FRANK SCALES, for the appellee.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

This suit was brought in the court below on a life insurance policy. It bore date in October, 1869, and the application was made by Jacob Beck, and was, in case of his death, payable to his wife, Anna Beck. It contained, as stated by appellant's witnesses, this clause: "If any of the statements made in the application for this policy, upon the faith of which this policy is issued, and which are to be deemed as a part thereof, shall be found to be untrue, then this policy shall be considered null and void." And there was testimony tending to prove that the application contained a statement, among others, in answer to a question, that his health had formerly always been good, and that the applicant had never had any serious

sickness.   The application seems to have been filled up, ready
to be signed, by a solicitor of the company, and signed by the
applicant.   There is no evidence that he ever read it or under-
stood its nature, or what would be the effect of any inaccuracy
of statement in answer to these various questions; nor that he
was then or afterward informed that he was required to war-
rant the truth of his statements in answer to these various
questions, and if either of them proved to be untrue that he
would forfeit his policy.

It is true, that such a statement is usually contained in
small print in the conditions annexed to the policy.  But these
are usually difficult to read, and, as is believed, they are seldom
if ever known to be contained in the policy by the holder.  In
this manner the honest and unsuspecting are easily over-
reached, and may frequently be imposed upon by the unscrupu-
lous.   When an application is filled out by an agent of the
company, and the assured requested to sign it, most persons
regard it as a mere form, and unless admonished of the im-
portance of accurate answers to the questions, answers are
hastily given without reflection or time to ascertain facts with
precise exactness, which is frequently insisted upon after a loss
occurs.  In this way the people are liable greatly to be abused,
and it is a matter of surprise that such bodies are still so ex-
tensively patronized.

In this case the defense interposed was, that the assured had
made a false answer in stating that he had not previously been
seriously sick, when it is claimed that he had been sick with
*delirium tremens.*   On this question there was a conflict of
evidence, the physician, who was an officer of the company
at the time of the trial, testifying that deceased had *delirium
tremens* in June previous to receiving the policy, and that he
then attended him and treated him for the disease.   On the
other hand, appellee states that her husband was not in the
habit of drinking, and in her statement she is strongly cor-
roborated by five other witnesses, one of whom was her hus-
band's partner for a number of years, and had been associated

in the daily transaction of their business during all that time. In such a conflict it was for the jury to decide, and we think the evidence clearly preponderates in favor of the verdict.

If the rebutting witnesses, who, so far as we can see, stand unimpeached, are to be credited, we cannot but be satisfied with the finding. Again, the circuit judge who tried the case and saw the witnesses on the stand, and had superior opportunities of estimating the value of the evidence, has, by overruling a motion for a new trial, signified his satisfaction with the result. Had there been grounds for the motion he would have unhesitatingly granted it, as, on such a motion, the principal responsibility for the correctness of the verdict rests on the court below. If wrong, he would not hesitate to set it aside. With us, who neither know nor see the witnesses who testify, we cannot estimate the worth of the evidence as can the circuit judge. He is charged with the duty of awarding a new trial when the finding is against the weight of evidence; whilst we never do so unless it seems to us that it is clearly and almost without doubt unsupported.

It is, again, urged that the court below erred in admitting evidence that appellants, to avoid a law suit, had offered appellee $500 for a settlement. This evidence was not strictly admissible, and should have been rejected. But inasmuch as we are satisfied with the finding, independent of that item of evidence, we cannot reverse for that reason. It could not have misled the jury, as they found the full amount of the policy, with interest. That evidence did not tend, in the slightest degree, to prove that there was due to appellee $1,123.48. It could only have operated, if at all, as an admission that $500 was due. Again, at the request of appellants, the jury were instructed that such an offer, if made by way of compromise, was not evidence, and should not be considered by them in finding their verdict. This, then, we can see, corrected any wrong it was liable to inflict on appellants. The judgment of the court below must be affirmed.

*Judgment affirmed.*