## BEDELL SMITH, APPELLANT, *v.* ELWIN A. IRELAND, RESPONDENT.

SPECIAL VERDICT.—CONCLUSION OF LAW.—A special vedict is not invalidated because the jury, in addition thereto, find a general verdict embodying a conclusion of law.

NEW TRIAL.—VERDICT AGAINST EVIDENCE.—A verdict will not be, set aside on the ground that the evidence is insufficient to justify it, if the evidence be conflicting, unless the court is satisfied that the verdict is against a clear preponderance of the evidence.

EVIDENCE CONSIDERED.—Certain evidence, stated in the opinion considered, and held sufficient to justify the verdict.

APPEAL from a judgment of the district court of the first district, and from an order refusing a new trial. The opinion states the facts.

*Messrs. Williams & Renich,* for the appellant.

*Messrs. Kimball & Heywood,* for the respondent.

ZANE, C. J.:

This is an action of claim and delivery, appealed from the first district court.

The defendant pleaded justification, as marshal, under an execution issued on a judgment against W. S. Hopson, in favor of Idleman Bros., and that the property described in the complaint was owned by Hopson, and by him sold to plaintiff before the levy, to hinder and delay Idleman Bros. and other creditors in the collection of their debts.

Under the instructions of the court the evidence was submitted to a jury with directions to find on the following questions: 1st. Was Hopson, at the time of sale, indebted to Idleman Bros.? 2d. Did Hopson sell to plaintiff, to delay, hinder or defraud his creditors generally, in the collection of their debts, or the firm of Idleman Bros.? 3d. Did plaintiff, at the time of sale, have notice that Hopson was indebted to Idleman Bros., and that the sale was made to hinder and delay them in the collection of this debt? 4th. What was the value of the property taken by defendant? 5th. Is the defendant entitled to a return of the property described in the complaint?

To the fourth question the jury answered one thousand five hundred dollars; and to each of the others, simply "yes." When considered with respect to the question alone the second answer is quite indefinite; but, viewed with the other questions and answers, the intention of the jury is sufficiently clear. The plaintiff's counsel makes the point, that, the fifth interrogatory submitted a question of law to the jury. Section 1400 compiled laws of Utah, 1876, declares; "A general verdict is that by which they (the jury) pronounce generally upon all or any of the issues either in favor of the plaintiff or defendant; a special verdict is that by which the jury find the facts only, leaving the judgment to the court. The special verdict shall present the conclusions of fact as established by the evidence, and not the evidence to prove them; and those conclusions of fact shall be so presented as that nothing shall remain to the court but to draw from them conclusions of law." This statute contemplates three classes of verdicts. 1st, general; 2d, special; 3rd, general and special. A general verdict is a direct statement of a conclusion of law, and an indirect statement of the facts from which the conclusion is drawn; it expressly affirms the law and inferentially the facts. The jury are directed by the court to indicate the facts found from the evidence by the statement of a conclusion of law. If they believe certain facts, they are told to state a certain conclusion, and if they do not believe such facts to state another conclusion.

The court states the law applicable to the facts which

the evidence tends to prove, and if the jury find the facts they state the conclusion as charged. In case of a general verdict, the court states the law applicable to the facts before they are found by the jury, and in a special verdict the jury find the facts first, and the court declares the law applicable to them afterwards. In either case, the jury judge of the facts and the court of the law. In the third class of verdicts, the jury state the conclusion of law applicable to the material facts as to which there is but little or no room for controversy, without mentioning them in their verdict, and specifically name the material facts mainly contested on the trial, without stating the conclusion of law applicable to them; the court reserves the right to make that statement after the finding of the jury. .

There was no room for controversy as to the existence of the material facts of the case aside from those specifically found. The controverted facts essential to the conclusion of law, of which the fifth finding was a statement, were specifically stated in other findings. It was within the discretion of the court to direct a general or special verdict, or special as to the controverted facts and general as to those not controverted on the trial. We find no error in the submission of questions to the jury, or in the refusal to submit others requested by the plaintiff. And the verdict embraces all the material issues, and is sufficiently specific.

The plaintiff insists that the findings of the jury are not sustained by the evidence. The alleged sale by Hopson to plaintiff was on March 21, 1883. The defendant insisted that it was made to hinder, delay and defraud the creditors of Hopson, and that plaintiff knew it. The plaintiff testified he was tending bar for Hopson on the day of the sale, and had been with him for several months; that he knew Idleman Bros.; that Lachs was their traveling agent, and that he was in the saloon the day before the sale, when Lachs was there; that he knew Hopson was in debt to Idleman Bros., and heard Hopson say he must get money to pay his debts. On same day, but after sale, heard Hopson say he had sold out to raise money to pay his debts. That bill of sale to witness was made about

eleven o'clock a. m., March 21, 1883, and the preliminary invoice was made the preceding day. As shown by it, the cost of stock was $1,900. Mr. Lachs, traveling salesman of Idleman Bros., testified that the day before the sale he had conversation with Hopson in his saloon, and plaintiff was there, and could have heard it; that witness asked Hopson for money, and said to him he was collecting that trip, and must have the money; that Hopson said he would try to raise some. Witness supposed plaintiff heard the conversation; it occurred in the afternoon. The next morning, about nine o'clock, had another conversation with Hopson in his saloon, and Smith was there; that the debt was mentioned, and Hopson then said he would raise witness some money; was then paying some to Woolner. Witness went to the saloon again the same forenoon, and Hopson paid him $100, and said he had sold out to Smith. Several other persons were there. The foregoing was the most important testimony for the defendant. It was contradicted in some important respects by the testimony for the plaintiff. The relations of Hopson and plaintiff, their associations and conduct, their business and financial necessities and conditions, with the circumstances which preceded, attended and followed the sale, as shown by the evidence, with the other evidence, when all considered together, afford inference that the sale to plaintiff was made to prevent and hinder the defendants in the collection of their debt. The contention before the jury was chiefly as to the good faith of the plaintiff in taking the bill of sale from Hopson. The evidence was conflicting, and the jury found the issues for the defendant. The authorities are to the effect that a court will not set aside a verdict unless satisfied it is against a clear preponderance of the evidence. In view of all the evidence, we are not satisfied the verdict is wrong.

O. Vandercook, the officer who levied the execution, was asked by defendant's counsel what Hopson said when witness demanded payment, and answered that Hopson said "he had no property to levy on—had money but would not pay, and that nobody could go through his pockets." Objections to the question and answer were interposed by

plaintiff and overruled by the court and exceptions taken. Defendant's counsel also asked witness, Mr. Lachs, what Hopson said to him on the same day but subsequent to the sale, and answered in substance as above. Objections to this question and answer were also made by plaintiff and overruled by the court, and exceptions were taken by plaintiff.

The admission of this evidence plaintiff assigns as error. Proof of a demand by the officer and the answer of Hopson that he had no property to levy on was competent, but the further answer that he "had money and nobody could go through his pockets," was incompetent, as was the answer of Lachs that Hopson said after the sale he "had money in his pocket but would not pay, and nobody could get it." Other evidence before the jury showed that Hopson had money after the sale and his refusal to pay more than the one hundred dollars paid, and twenty-five per cent of the remaining debt, which was offered in satisfaction, but not accepted.

Without the objectionable testimony there was sufficient evidence to show that Hopson had money which he refused to pay on his debt to defendant. The testimony objected to did not tend to prove that plaintiff acted in bad faith, because it does not appear he knew of the statements of Hopson or assented to them. Bad faith on the part of plaintiff was the question about which there was the most room for controversy. The probabilities are, the jury would have reached the same conclusion without the incompetent testimony. In view of all the evidence, we incline to the opinion that the jury did substantial justice and that the errors complained of are not sufficient to reverse this case. We find no other error in this record. The judgment of the court below is affirmed.

EMERSON, J., and TWISS, J., concurred.