## JOHN B. HOPKINS, AND ANOTHER, RESPONDENTS, v. OGDEN CITY, APPELLANT.

MUNICIPAL CORPORATIONS.—NEGLIGENCE.—Respondent's horse, while
being driven along the street, broke through into a water pipe or
stepped through a hole caused by a break in the pipe, which
had occurred two days before it was repaired and a day or two
before the injury. Several breaks of a like character occurred
at the place about that time, and the break was not repaired un-
til a day and a half or two days after actual notice to the city
recorder. There was no stick in the hole and nothing to indicate
danger and they did not notice the hole; held, that a verdict for
the respondents was not so clearly against the weight of the evi-
dence as to require a new trial.

NEW TRIAL.—SETTING ASIDE VERDICT.—The court will not set aside
the verdict simply because it inclines to the belief that it should
have been otherwise, but it must be satisfied and clearly con-
vinced that the verdict is wrong.

APPEAL from a judgment of the district court of the
first district, and from an order refusing a new trial.
The facts appear in the opinion.

Mr. N. Tanner, Jr., and Mr. P. H. Emerson, for ap-
pellant.

Mr. James N. Kimball, for respondent.

ZANE, C. J.:

This action was instituted by the respondents to recover
damages suffered by them in consequence of the alleged
negligence of the appellant. The evidence was submitted
to a jury, who returned a verdict for the respondents in the
sum of $59. The appellant entered a motion for a new
trial, which the court overruled, and then judgment was
entered on the verdict. The denial of the motion for a
new trial the appellant assigns for error. The appellant
insists that the verdict was unauthorized by the evi-
dence.

It appears, from the evidence, that the plaintiffs' horse,
while being driven by one Milton West, a boy engaged in

delivering goods for them from their store, either broke through into a water-pipe beneath the surface of a public street in the city of Ogden, or stepped into an open hole in the surface of the street caused by a break in the pipe. The driver, West, testified that about October 5, 1885, he delivered some goods to Rev. McLaw's residence, and, as he drove away, his horse fell into a hole in the street about 15 or 20 feet from the sidewalk, and was injured in the shoulder; that the ground was wet quite a distance all around the hole, and that it had been so for two or three days; that he had not driven over that particular spot before, but near to it; that the ground was loose on the top; that he could not tell whether a hole had been covered or not; and that he saw no hole before the horse fell in. Rev. Joseph McLaw testified that he resided on Third street, between Main and Young, about a block and a half from the business part of the city; that he heard of the accident to plaintiffs' horse in the fall of 1885, and of the place where it occurred; that there was a break in the water-main there, and it made a large hole in the street; that the break occurred a day and a half or two days before it was repaired; that the hole was filled with water, and could not be seen unless a person happened to notice the water welling up out of it; that it was in that condition for a day and a half or two days before the injury to respondents' horse; that prior to that time the street had been out of repair over the water-pipe in front of Mr. Bank's house adjoining.    Witness further answered: "I think my attention was first called to the defect in the street in front of my own house by children going to school putting sticks in the hole; and then, I think, in the second place, the meat boy who delivered meat at my house, rode up there, and his horse slipped in this hole, and it frightened the boy very much, and my attention was called to it in that way."    The witness further testified that he went up town at noon, but found no one to report to, and in the evening he reported the matter to Mr. Stevens, the city recorder; that this was Saturday evening, and the street was repaired on Monday.    The witness Hyrum Goodell, superintendent of water-works, testified that three breakages occurred in

the water-pipe on Third street, between Main and Young streets, in the fall of 1885—two in front of McLaw's house, and a third between that and Dr. Anderson's; that he repaired one in front of McLaw's on September 14th, and one between his house and Dr. Anderson's on October 13th; that the one in front of Dr. Anderson's was a large break, plainly to be seen, and that he put sticks into the holes when he learned of them. . The driver stated that he saw no stick in the hole his horse fell into; and witness McLaw testified that he saw none, nor anything to warn persons of danger. It further appears, from the evidence, that the superintendent of the water-works repaired another break on the same day, and before he repaired the one on Third street. The character and frequency of the breaks in the water-main near the place of the injury indicated that the pipes there were so defective as to render the streets insecure, and travel on it dangerous to horses.

Under the averments of the complaint, it was proper to show that the pipe was defective when new, and continued so until the injury, or that it became so from age and use, or from any other cause. If the officers or agents of the city in charge of the water-pipes or of the streets, because of incompetency or the want of attention, failed to discover that the pipe was defective when new, and remained so, or that it had become so by age or use, or any cause, and did not repair it with diligence; or if they had actual notice of the particular break, and did not use reasonable means to warn travelers of the danger, or did not repair the break, with reasonable diligence, after actual notice; or if the pipe remained defective or insecure for such a length of time, and under such circumstances, that such officers and agents, in the use of reasonable capacity and diligence could have ascertained such defect and insecurity, and did not learn of it, and did not repair with reasonable diligence —in either case the city would be chargeable with negligence. The law gave to the city of Ogden the control of its streets, and the right to repair them, and also the right to lay its water-pipes beneath their surface. To accomplish these ends, it was authorized to collect taxes, and, having this power, it was required, for the safety of

the traveling public, to keep its streets in repair.  It was its duty to use all reasonable diligence and skill to make such water-pipes and streets safe and secure.  The public has a right to insist that the city, by its officers and agents, should use all reasonable diligence to render the streets and water-ways safe and secure; and, in case of injury to persons or property because of the lack of such skill or diligence, the injured party has a right to demand compensation from such corporation.

When there is no evidence to support the finding of the jury as to any essential fact, or when their finding as to any such fact is clearly against the weight of the evidence, the court should not hesitate to grant a new trial; but, when the court is uncertain and in doubt as to the side upon which the evidence preponderates, it will not disturb the verdict.  The court will not set the verdict aside simply because it inclines to the belief that it should have been otherwise.  A party to a law cause has a legal right to submit issues of fact to a jury, and the court should not set aside the finding of a jury on such an issue, unless it is able to say without hesitation, and free from all reasonable doubt, that the finding was wrong.  In an equity cause the chancellor regards the finding of the jury on an issue of fact as advisory.  Its effect is to aid the judgment and conscience of the chancellor.  He may disregard such a finding if he merely differs from the jury in respect thereto.  The law is different in suits at law.  In such, the court must be fully satisfied and clearly convinced that the verdict is wrong.

After a careful consideration of all the evidence in this cause, we are of the opinion that the exception to the ruling of the court below, on a motion for a new trial, is not well taken.  Other errors were assigned, but we do not consider it necessary to consider them separately in this opinion.  We find no error in this record, and therefore affirm the judgment of the court below.

HENDERSON, J., and BOREMAN, J., concurred.