## MALOLA POOL, Respondent, v. SOUTHERN PACIFIC COMPANY, Appellant.

7 303
8 51
26* 654
29* 964

7 303
13 421
13 422

7 303
s20 227
s160US438

7 303
23 149

7 303
25 455

Master and Servant.—Negligence.—Contributory Negligence. —Where deceased and another man were working upon a car without having a red flag displayed, and an engine approached, and deceased told another employé to go and stop the engine, which was done and the engine stopped, and after a little while the switchman motioned for the engine to come on, and the engine struck the car which was being repaired, and in consequence thereof deceased was killed; *held*, that the questions of negligence and contributory negligence were properly left to the jury.

Id.—Id.—Fellow Servant.—A switchman signaling to an engine to come on towards a car upon which men are working whose safety will be endangered by the place in which they are working being rendered unsafe is not a fellow servant with the men repairing the car.

Damages.—Death of Deceased.—Family.—In an action brought to recover damages for a death under the statute which provides that such damages shall be given as under all the circumstances may be just, it is proper to instruct the jury that among other things they may consider the number and ages of his family.

Appeal from a judgment of the district court of the first district and from an order refusing a new trial. The opinion states the facts.

*Messrs. Marshall and Royle*, for the appellant.

*Mr. E. M. Allison, Jr.*, and *Messrs. Kimball and White*, for the respondent.

Miner, J.:

This action was brought by the plaintiff, as adminis-

tratrix of the estate of Joseph S. Pool, deceased, to recover damage for the alleged negligent killing of Joseph S. Pool while repairing a car in defendant's yard at Ogden, Utah, September 12, 1888. The action was tried with a jury in the first district court at Ogden, April 4, 1890, and a verdict rendered in favor of plaintiff for the sum of $10,000. This defendant assigns as error: (1) Contributory negligence on the part of the deceased, Joseph S. Pool; (2) that Switchman Kilpatrick was a fellow-servant of deceased, and his contributory negligence, if any, caused the death of the deceased, who was a fellow-servant at the time; (3) excessive damages; (4) errors in the instructions of the court to the jury.

The undisputed facts in the case show that at the time of the accident in question the deceased, Joseph S. Pool, together with two co-laborers, named Powers and Rice, were engaged as car-repairers for the defendant at their shops at Ogden, under the orders of Mr. Starr, their foreman. That on the day in question Powers and Pool were ordered by Starr to repair a car on the repair track No. 1 in defendant's yard, where it was customary to make slight repairs to cars. At this place there were six or seven parallel tracks besides the main track on defendant's line. That Pool and Powers were engaged in repairing this car in question, and they were in a position under the car near the draw-bars, between the rails of the track, when the noise of an approaching switch-engine warned them of their dangerous position.

Plaintiff produced one Frank J. Powers, who testified in substance that he heard a noise, and remarked to Pool, who was under the car: "'I have an idea that they are coming.' He said, 'Yes; they are coming in here.' Says I, 'Let's get out;' and Pool immediately moved to get out on the east side of the car. Mr. Rice [the co-laborer] was standing by the side of the car,

outside of the track; and I told him in the hearing of Pool to go and stop the engine and caboose, and not let it hit the car. I told him the car could not go out until it was repaired. Rice said, 'All right,' and then he stepped down to the other end of the car, and made signal to stop the engine. The engine came down within six feet of our car and stopped. I heard Rice tell somebody not to hit the car; that we were working on it. As soon as I heard that order given I went to work with Pool under the car. I felt uneasy, however, and I looked out soon after, and saw one of the yard-men, Kilpatrick, giving a signal to back up. I said to Pool, 'Look out, Pool; they are right on us;' and I threw myself over the rail, and was injured. After I got out I saw Pool lying betweent the two cars badly injured. He died soon afterwards. The cars came together with great force, and caught Pool between them. The engineer on the engine was Mr. Weaver; the fireman was Mr. Purdy; the switchman and brakeman were Benjamin Kilpatrick and William Taylor. At the time of the accident, they, Kilpatrick and Taylor, were standing about one hundred feet from us. Kilpatrick was acting as one of the switchmen. We both relied on Rice seeing that the engineer was notified that we was under the car, and we thought he would attend to it. We put out no red flag as a signal to the engineer before we went under there. Such flag would have notified the engineer. We didn't do it because it was too much work, and we thought it would only take a few minutes to make the repairs; and we also knew that I had told Rice to warn the engineer to watch us, and not to back up. I heard Rice tell the switchman, Kilpatrick, not to hit the car; and supposed that they would not do so. I heard Rice tell the switchman not to hit the car, and that was

satisfactory to me. I heard Rice talking to the switchman, Kilpatrick,—I think it was Kilpatrick,—and I think Kilpatrick, the switchman, signaled the engineer to back up after he had been warned not to do so by Rice.

Kilpatrick was a brakeman in the yard, and was sometimes called a switchman. He attended to switching in the yard, and doing ordinary work of a brakeman, and helps to make up trains, and gives signals to engineers to back up and start. Kilpatrick gave the signal to back up, and that caused the accident. Kilpatrick was acting at the time under orders from the yard-master. The duty of the car-repairers was to obey the foreman's orders, and work in the shop, and make small repairs in the yard occasionally. When Rice spoke to and warned Kilpatrick, the engine was about twenty feet away, and I was under the car with Pool, and heard Kilpatrick make some reply to Rice." George C. Rice, a witness produced by the plaintiff, testified, in substance, " that at this time Kilpatrick was riding on the steps on the forepart of the caboose as this engine backed down towards our car. I told Kilpatrick, the switchman, not to attach to the car,—not to hit it; that there were men working under the car. The engine came to within six feet of this car being repaired, and stopped after this notice by Rice to Kilpatrick. Soon after this Kilpatrick gave a signal to the engineer for it to come back. The engine came back with great force, and Pool was injured and killed." The defense offered no proof, and Kilpatrick was not sworn in the case. Pool was an able-bodied man, of good character, 29 years of age at the time of his death, and was receiving $75 per month from the defendant, and had a wife and several children dependent upon him for support. The jury found as special find-

ings of fact, upon questions submitted to them by the court, that Kilpatrick was negligent in the discharge of his duty as switchman ·in giving signals to the engineer to back his engine down against the car under which the deceased, Pool, was working, knowing when he gave such signal that Pool was working under the car. They also found that at the time of the injury Pool was using such precaution and care to avoid injury as a prudent man, in the exercise of due care should do; and that Kilpatrick was not a fellow-servant of Pool.

From the testimony given in the case we are satisfied that Kilpatrick was not a fellow-servant of the deceased, but was then engaged in a different kind and department of service, and was not in the same common employment, and was under the orders of a different master. Nor can there be any question made but that Kilpatrick heard the signal from Rice to stop the engine, and that he acted upon such signal, and did stop the engine about six feet from the car in question, under which the deceased was working at the time. The signal was understood by the switchman, Kilpatrick, and obeyed by him. The verbal communication to Kilpatrick to stop the engine was a notice and warning as certain, positive, and safe as if there had been a red-flag signal used in such case. In any event, Kilpatrick received it, understood it, and replied to it, and complied with it at the time, and he would have done no more had there been a red-flag signal placed by the car. Powers and the deceased, Pool, assumed, as they would have a right to assume under the circumstances, and as the jury found, that there would be no danger in proceeding with their work, and before they had completed it Kilpatrick, the switchman, with notice of their position and danger, and without giving any warning, negligently gave the signal to back up, and the engine immediately backed up with

great force, and Pool was caught between the cars and killed. "An employer is not liable for injuries to his servant caused by the negligence of a fellow-servant in a common employment; but this exemption does not extend to injuries caused by the carelessness or negligence of another person in the master's service in an employment not common to that in which the person injured is engaged, and upon a subject in regard to which the person injured has a right to look for care and diligence on the part of the other person as the representative of a common master." *Daniels* v. *Railway Co.*, 6 Utah 357, 23 Pac. Rep. 762; *Railroad Co.* v. *Kelly*, 127 Ill. 637, 21 N. E. Rep. 203; *Railway Co.* v. *Ross*, 112 U. S. 377, 5 Sup. Ct. Rep. 184; *Morton* v. *Railway Co.*, (Mich.) 46 N. W. Rep. 111; *Railway Co.* v. *Morgenstern*, 106 Ill. 216; *Kane* v. *Railway Co.*, 128 U. S. 91, 9 Sup. Ct. Rep. 16; *Reddon* v. *Railway Co.*, 5 Utah, 344, 15 Pac. Rep. 262; *Hough* v. *Railway Co.*, 100 U. S. 213; *Railway Co.* v. *Herbert*, 116 U. S. 642, 6 Sup. Ct. Rep. 590.

The special instructions were properly submitted by the court to the jury, and their findings under the evidence should not be disturbed. Comp. Laws 1888, §§ 3374, 3978; *Webb* v. *Railway Co.*, *ante*, 24 Pac. Rep. 616. So, also, we think the question of negligence or contributory negligence was properly submitted to the jury. In such cases, in order to determine whether an employé, by recklessly exposing himself to peril, has failed to exercise that degree of care for his personal safety that might reasonably be expected, has thus by his own negligence contributed to cause the accident, regard must always be had to the circumstances of the case, and to the exigencies of his position ; and the decision of this question ought not to be withheld from the jury unless the evidence, after giving the plaintiff the benefit of every inference to be fairly drawn from it, so conclusively shows contribu-

tory negligence that the court would be compelled, in the exercise of sound judicial discretion, to set aside any verdict rendered or returned in his favor. *Kane* v. *Railway Co.,* 128 U. S. 91, 9 Sup. Ct. Rep. 16 ; *Morton* v. *Railway Co.,* (Mich.) 46 N. W. Rep. 111 ; *Railway Co.* v. *Steinburg,* 17 Mich. 99. Defendant's counsel contend that the trial court erred in instructing the jury, among other things, that they should "determine, in the first place, the number of the family, the number of the children, and the ages of the family, and determine the age of the deceased, his ability to earn wages and provide for the family ; determine from your own experience. You can judge as to what his expectancy may have been, and from all these circumstances determine what in a pecuniary sense this family has lost by the loss of the husband and father ; the care he may have given those children ; and determine it in a business way, and without sentiment, just how much in a pecuniary sense they ought to recover for the injury that they have sustained."

Section 2962, Comp. Laws 1888, reads as follows : "That every such action shall be brought by and in the name of the personal representative of such deceased person, and the amount received in every such action shall be distributed, by direction and decree of the proper probate court, to such persons (other than creditors) as are by law entitled to distributive shares of the estate of such deceased person, in such proportions as are prescribed by law." Section 3179, Id., reads as follows : "When the death of a person, not being a minor, is caused by the wrongful act of another, his heirs and personal representatives may maintain an action for damages against the person causing the death ; or if such person be employed by another person, who is responsible for his conduct, then also against such other person. In every action, under this and the preceding section,

such damages may be given as under all the circumstances of the case may be just." The evident purpose of these provisions of the statute was to allow the widow and heirs or personal representatives of the deceased to recover such pecuniary damages as, under all the circumstances of the case, were just. Now, what were the circumstances of the case contemplated by the statute from which the jury are to estimate the damages? Plainly, they should determine from the evidence in the case, based upon well-defined facts or known circumstances, what the pecuniary injury and loss to the wife and children was, resulting from the death, which was made the basis of the action; and to ascertain these fairly the jury should know and determine the number in the family dependent upon him for support and previously provided for; the number and ages of the children; their kindly demeanor towards each other, or the lack of it; the loss of his society as a husband and father; the age and health of his wife, and age and health of the deceased; his ability to earn wages and provide for his family; determine what he has done, and was then doing, or would be likely to do, for his family; and from these facts and circumstances determine what pecuniary damages the wife and family were justly entitled to as pecuniary compensation to them resulting from the death in question.

What the family would lose by the death would be what it was accustomed to receive or had reasonable expectation of receiving in his life-time. The extent of the loss should not be measured by the wealth or poverty of the recipients or giver, but by his beneficent and pecuniary contributions given, or in reasonable expectation of being given, to the widow and heirs, as shown by the proof and judged from all the circumstances of the case to be just, but measured by pecuniary standard. If the

testimony did not show that there were heirs living who were pecuniarily injured by his death, no recovery should be had, as in that case no one has sustained any pecuniary loss or injury by his death. *Van Brunt* v. *Railway Co.*, 78 Mich. 530, 44 N. W. Rep. 321; *Railway Co.* v. *Bayfield*, 37 Mich. 205; *Balch* v. *Railway Co.*, 34 N. W. Rep. 884; *Tilley* v. *Railway Co.*, 24 N. Y. 471; *Railroad Co.* v. *Goodman*, 62 Pa. St. 339; *Railroad Co.* v. *Keeler*, 67 Pa. St. 300; *Staal* v. *Railroad Co.*, 57 Mich. 239, 23 N. W. Rep. 795; *Railroad Co.* v. *Shannon*, 43 Ill. 338; *Matthews* v. *Warner*, 29 Grat. 570; *Lockwood* v. *Railroad Co.*, 98 N. Y. 523; *Cook* v. *Railroad Co.*, 60 Cal. 604; *Webb* v. *Railway Co.*, ante, 24 Pac. Rep. 616; *Beeson* v. *Mining Co.*, 57 Cal. 38; *Clifford* v. *Allman*, 84 Cal. 529, 24 Pac. Rep. 292. The amount of damages to be given was a question for the jury to determine under the statute, and we cannot disturb their findings in this case. On the whole record we find no error. The judgment of the lower court is affirmed,

Zane, C. J., and Anderson, J. concurred.

Blackburn, J. (*dissenting*):

This suit is brought to recover damages for the death of Joseph S. Pool, caused, as is claimed, by the negligence of the defendant company. A trial was had, and verdict and judgment for plaintiff. Defendant moved for a new trial, which was overruled, and it appealed. The undisputed facts are substantially as follows: Decedent and one Powers were employés of the defendant company, at work at Ogden, in its repair-shops, and were directed by the foreman to make some slight repairs on a car on a track in the yard. They went to the car, and had to go under it to make the repairs, and did not put out the usual signal—a red flag—for their

protection, thinking, as the witness explained, it was too much trouble for the length of time it would take them to do the work. After they had commenced work they heard an engine coming, and one of them requested a man by the name of Rice, a fellow-servant, engaged in the repair-shop, to stop the engine, and give warning that they were at work on the car. The engine stopped a few feet from the car they were at work upon, and they resumed work; and in a very short time a switchman employed in the yard, by the name of Kilpatrick, gave a signal to the engineer to back up, which he did with great force, and the decedent was injured, and died in a very short time. The evidence in behalf of the plaintiff in reference to what took place immediately preceding the accident is as follows: Powers: "When I saw the engine come down upon us, I said to Rice, 'Co and stop him, and don't let him hit this car at all, as it has to be repaired before it can go out.' I saw him go to the other end of the car, and give the usual signal to stop. He did not say anything at that time. They came within about six feet of the car, and stopped. I heard Mr. Rice tell somebody not to hit this car; that they were working there. We went right to work again under the car. I heard Rice speak to Kilpatrick, and I heard Kilpatrick make some reply; but I did not know what it was. The car was moving then, and moved up to about six feet, and stopped. He told Kilpatrick not to hit the car; and I think he told him we were working there." Rice: "I had no conversation further than to tell Kilpatrick not to touch the car, for men were working there. He was twenty or thirty feet away at the time. They stopped within about six feet of the car. The next thing I saw was Kilpatrick signaling the engineer to back up, and it came back with great force." Three errors are assigned for the reversal of this case: (1) Con-

tributory negligence of the decedent; (2) Kilpatrick was a fellow-servant of the deceased; (3) excessive damages.

I think Kilpatrick was not a fellow-servant of the deceased, under the rule laid down by this Court in the case of *Daniels* v. *Railway Co.,* 6 Utah, 357, 23 Pac. Rep. 762. I adhere to that decision, and think it states the best rule, considering the many divers decisions on that subject. The jury found that he was not a fellow-servant, and also his negligence caused the death of the decedent. These findings would sustain the verdict if there was no want of reasonable care contributing to his death on the part of the decedent. This question was also submitted to the jury: "Did the deceased use such care and precaution to avoid the injury as a prudent man in the exercise of due care should have used?" To this question the jury answered, "Yes." I have disposed of the question as to whether Kilpatrick was a fellow-servant of the deceased. But the important one was, was the decedent guilty of contributory negligence? The jury found he was not. Was that finding right, and, if not right, is the appellate court bound by it? The rule is, if the finding of the jury is clearly and manifestly against the weight of the evidence, the trial court should grant a new trial, and if it fails to do that, it is error, and the appellate court should reverse. Hil. New Trials, 336, 339; *Keaggy* v. *Hite,* 12 Ill. 100; *Belden* v. *Innis,* 84 Ill. 78; *Insurance Co.* v. *Beck,* 74 Ill. 165; *Bolton* v. *Howell,* 18 Ind. 181; *Smith* v. *Ireland,* 4 Utah, 187, 7 Pac. Rep. 749; *Hopkins* v. *Ogden City,* 5 Utah, 390, 16 Pac. Rep. 596.

I think in this case the jury wholly misconceived the force and effect of the evidence. It was all given in behalf of the plaintiff. The decedent neglected to put out the well-known and usual signal of warning, a red flag, because it was too much trouble, and trusted to one

Rice to protect him. Rice was his fellow-servant, and if he was hurt by the negligence of Rice, his fellow-servant, the plaintiff cannot recover. Rice says he told Kilpatrick, the switchman, who was controlling the engineer running the engine, not to touch the car; the decedent was at work under it; that Kilpatrick was twenty or thirty feet away. He does not say that Kilpatrick heard him. Indeed, he was not asked that question. If Kilpatrick heard the warning, and, notwithstanding, signaled the engineer to move back, his act was more than negligence,—it was malice and murder. We cannot think that Kilpatrick heard the warning. We are not ready to presume him guilty of deliberately killing the decedent. Rice must have failed to make Kilpatrick hear and understand him. If so, Rice's negligence contributed to the injury, and the defendant was not guilty of negligence through Kilpatrick, and the plaintiff cannot recover. But were the decedent and Powers, his companion, guilty of contributory negligence in not hanging out the red flag, the usual signal, and one that the switchman and the engineer and everybody connected with the operation of the railroad understood and respected? I think they were. In all human probability the accident would not have happened if the red flag had been put up. The engineer would have seen it, and not have obeyed the signal of the switchman. The switchman would have seen it, and not have given the signal to back up.

By intrusting their safety to Rice, they took the chances of his carelessness in giving the proper information to the switchman, and the chances of the switchman hearing and understanding Rice. Their safety would have been certain if the flag had been hung out. It was a mute and silent warning, but neither switchman nor engineer could have mistaken it, nor would they have disobeyed it. I think, therefore, as a matter of law, that

the decedent, by neglecting to use the well-known signal,—the usual and well-understood precaution,—and trusting to the chance of a fellow-servant protecting him, was guilty of contributory negligence on his part, and the plaintiff cannot recover. Railroad employés occupy very responsible positions. The safety of themselves, their fellow-employés, the safety of the property of the company, and the lives of the traveling public depend upon their diligence in the performance of their duties, and in the strict use of the ordinary precautions, well understood and prescribed by the company. Railroad employés may not at their pleasure set aside the rules and precautions made by the company for their protection, and substitute others, without assuming all the risks consequent upon such substitution. The other alleged errors need not be noticed, as this one is sufficient to reverse the case. I think the trial court should have granted a new trial; and this case should be reversed, and a *venire de novo* awarded.