MALOLA POOL, ADMINISTRATRIX OF THE ESTATE
OF JOSEPH POOL, DECEASED, RESPONDENT *v.*
SOUTHERN PACIFIC COMPANY, A CORPORA-
TION, APPELLANT.

PERSONAL INJURIES—ACTION FOR DAMAGES—QUESTIONS OF NEG
LIGENCE—GENERAL RULE—WHEN QUESTIONS OF LAW.  CON-
TRACT OF EMPLOYMENT—MASTER'S OBLIGATION—FACTS UNDER
WHICH MASTER IS LIABLE—NEGLIGENCE.  DUTY OF MASTER TO
PROMULGATE RULES TO INSURE SAFETY OF EMPLOYEES.  DUTY
IN PARTICULAR CASE—NEGLIGENCE OF MASTER.  FELLOW-SER-
VANTS—WHO ARE NOT.  WHEN MASTER IS LIABLE ALTHOUGH
INJURY DIRECTLY CAUSED BY ACT OF FELLOW-SERVANT.  CON-
TRIBUTORY NEGLIGENCE—WHEN QUESTION MAY BE WITHDRAWN
FROM JURY—NON-SUIT.  EXCEPTIONS—TO INSTRUCTIONS—WHEN
IMMATERIAL.  GENERAL EXCEPTIONS—NOT CONSIDERED.

*Questions of Negligence—General Rule—When Questions of Law.*
   Although as a general rule questions of negligence are for the
   jury, still when the facts are undisputed, negligence becomes
   a question of law for the court.

*Contract of Employment—Master's Obligation—Facts Under Which
   Master is Liable—Negligence.*
   Under the rule that the contract of employment imposes upon
   the master the implied obligation not to expose the servant
   to dangers which the master by the exercise of reasonable
   care, skill and prudence could avert, evidence which shows
   that deceased, a car repairer, was directed to repair a car
   standing on a track, other than a repair track, that he went
   under the car for the purpose of making repairs as directed,
   that no danger flag was placed on the car being repaired, and
   that while the deceased was so employed, an engine and
   caboose, under the direction of K., the foreman of the
   switchmen in the train department, who had actual knowl-
   edge of deceased's position under the car, was backed against
   the car, resulting in the injury and death of the deceased,

clearly shows that defendant did not properly discharge the duties which it owed to the deceased under the contract of employment, and was guilty of gross negligence.

Among the implied duties imposed by the contract of employment, upon the master, are, that he shall provide reasonably suitable means and appliances to enable the servant to do his work as safely as the hazard incident to the employment will permit, and that he will provide a suitable and reasonably safe place for doing the work to be performed by the servant.

The master cannot escape liability for injuries inflicted upon his servant for a negligent discharge of these duties by entrusting their performance to another. These duties are personal duties of the master which can in no way be delegated so as to relieve him from responsibility. A failure to perform these duties, or any negligence in their performance, is the negligence of the master for which he is liable. Such negligence is not a hazard necessarily attendant upon the occupation of the servant. Nor is it one which he, in legal contemplation is presumed to risk in the service of the master.

*Duty of Master to Promulgate Rules to Insure Safety of Employés*

When the nature of the business is such as to require it, the law imposes upon the master the duty of making and promul gating suitable rules to promote the safety of his employés.

*Duty in Particular Case—Negligence of Master.*

Where the nature of the employment of car repairer is so hazardous as the evidence herein disclosed, the duty is imposed upon the master of making and promulgating a rule requiring the placing of danger flags upon cars, when repairers are under them, and forbidding any coupling to be done by a locomotive while they are so engaged.

*Fellow-Servants—Who are Not.*

A laborer in the car shops of a railroad corporation and the foreman of the switchmen in the train department are not fellow-servants.[1]

---

[1] *Webb* v. *Railway Co.*, 7 Utah, 357; *Daniels* v. *Railway Co.*, 6 Utah, 357; *Dryberg* v. *Mercur Co.*, 18 Utah, 410; *Armstrong* v. *Railway Co.*, 8 Utah, 420; *Openshaw* v. *Railway Co.*, 7 Utah, 307; Same Case, 160 U. S. 438; *Stephani* v. *Southern Pac. Co.*, 19 Utah, 196, distinguished.

*When Master is Liable Although Injury Directly Caused by Act of Fellow-Servant.*

> Even if the injury complained of was directly caused by the act of a fellow-servant, if the chances of its occurrence would have been greatly less if the defendant had faithfully performed the duties it owed deceased, and its negligence in this regard contributed to the injury, the defendant is liable.

*Contributory Negligence—When Question may be Withdrawn from Jury—Non-Suit.*

> It is only when the negligence of the plaintiff clearly appears from the evidence that a trial court is justified in withdrawing the question of contributory negligence from the jury, and where the place where the deceased was ordered to work was not necessarily or inherently dangerous, he had a right to presume that he would not be exposed to unnecessary danger, and that defendant had used proper care to render the place where he was to work reasonably safe; and the fact that he in obedience to the order of the foreman in charge of repairers, went to work under the car, beneath which he was fatally injured, does not establish contributory negligence.

*Exceptions—To Instructions—When Immaterial.*

> Where, under the evidence, and the legal deductions therefrom, the trial court would have been justified in instructing the jury to find for the plaintiff, and in their deliberations to consider and pass upon the question of damages only, and the verdict on the merits is such as the trial court might have properly directed, exceptions to instructions given on the questions of negligence, fellow-servants and the burden of proof are immatetial.

*General Exceptions—Not Considered.*

> An exception to an instruction of a trial court which does not specify the ground of the objection is a general exception and will not be considered on appeal.[1]

(Decided July 3, 1899.)

Appeal from the Second District, Weber county, Hon. H. H. Rolapp, *Judge.*

---

[1] See *Wilson* v. *Sioux Con. Mng. Co.*, 16 Utah, 392.

Action by plaintiff as administratrix to recover damages for the death of Joseph S. Pool, alleged to have been caused by the negligence of defendant. Defendant's motion for a non-suit was denied and a verdict and judgment for plaintiff rendered. Defendant appealed. *Affirmed.*

*Messrs. Marshall, Royle* and *Hemstead,* for appllants.

*David Evans, Esq., L. R. Rogers, Esq.* and *W. R. White, Esq.,* for respondent.

BASKIN, J.

This is an action in which the plaintiff seeks, as administratrix of Joseph S. Pool, deceased, to recover damages for the death of the said deceased, alleged to have been caused by the negligence and carelessness of the defendant and its servants, while the deceased, as an employee, under the direction of the defendant, was engaged in repairing one of the defendant's cars.

Among other allegations, not necessary to mention, the answer denied the negligence and carelessness charged in the complaint, and alleged "That the said deceased was injured while performing services not within the scope of his employment, and through and by reason of his own carelessness and disregard for the orders of defendant, and of ordinary care and caution, and by the like carelessness of his fellow-servants, and for which, and for whom this defendant is in no wise responsible."

When the plaintiff rested, the defendant moved for a non-suit on the following grounds:

First. "That no negligence had been shown on the part of the defendant.

Second. "That negligence had been shown on the part of the deceased.

Third. "That any other negligence intervening other than that of the deceased, was that of a fellow servant."

The motion for a non-suit was denied, and the defendant declined to offer any testimony. Thereupon the case was submitted to the jury on the evidence of the plaintiff. The jury returned a verdict in favor of plaintiff, and assessed the damages at $12,000.00, for which judgment was rendered.

A motion for a new trial was made by the defendant, which being overruled, an appeal to this court from the final judgment was taken by the defendant.

A motion for a non-suit based upon the insufficiency of the evidence, is in effect a demurrer to the evidence, and under our code practice, performs the same office as a demurrer to the evidence does under the common law practice,—Gould on Plead. Ch. 9, part 2, p. 446,—and therefore admits the truth of the evidence, and the legal deductions therefrom.

The question for determination therefore is, do the undisputed evidence and the deduction therefrom warrant the recovery had by the plaintiff.

The first ground for the motion for a non-suit is that the evidence does not show that the defendant was negligent.

It is a general rule that the question of negligence is one for the jury; but where, as in this case, the facts are undisputed, the question of negligence is one of law, and the court may withdraw the case from the jury altogether and grant a non-suit, when it is clear from the evidence that there is an absence of negligence.

In this case the defendant, being a corporation, could only act through the agency of natural persons. If, therefore, the deceased was killed through negligence, the acts constituting the negligence must have been done by a natural person or persons. If, however, such person or

persons bore such relations to the defendant that their acts, in contemplation of law, were the acts of the defendant, performed in carrying out some general or special duties which the defendant owed to the deceased and which by the contract of the employment the defendant was under obligation to perform, then the defendant is liable, unless the deceased was guilty of such contributory negligence as exempts the defendant from liability.

To determine whether such relations and obligations are disclosed by the facts, a consideration of the duties which the master owes to his employees and who are fellow-servants within the rule which exempts the master from liability to his servant, who is injured by the negligence of a fellow-servant, is necessary.

1. As to the duties which the master owes to his servant.

It is well settled that the contract of employment imposes upon the master the implied obligation not to expose the servant to dangers which the master by the exercise of reasonable care, skill and prudence, could avert. *Northern Pac. R. R. Co.* v. *Peterson,* 162 U. S. 353; *Hough* v. *Railway Co.,* 100 U. S. 113–117; *Wabash Ry. Co.* v. *McDaniels,* 107 U. S. 454–459; Sherman & Redfield's Negligence, sec. 189 and cases cited.   2 Thompson on Neg. p. 972, sec. 3, and the numerous cases cited in note 1; Bailey's Mast. Liability, p. 1 and 2, and note.

Among the implied obligation so imposed upon the master, enumerated by the authorities just quoted, are the following: (1) That he shall provide reasonably suitable means and appliances to enable the servant to do his work as safely as the hazard incident to the employment will permit; (2) that he will provide a suitable and reasonably safe place for doing the work to be performed by the servant.

The master cannot escape liability for injuries inflicted upon his servant for a negligent discharge of these duties, by entrusting their performance to another. These duties are personal duties of the master which can in no way be delegated so as to relieve him from responsibility. A failure to perform these duties, or any negligence in their performance is the negligence of the master for which he is liable. Such negligence is not a hazard necessarily attendant upon the occupation of the servant. Nor is it one which he, in legal contemplation, is presumed to risk in the service of the master. *Wright* v. *Southern Pacific Co.* 14 Utah, 392, 393; *Reddon* v. *Railway Co.*, 5 Utah, 153; *Cook* v. *Mining Co.*, 12 Utah, 51; *Northern Pac. R. R. Co.* v. *Peterson*, 162 U. S. 353; *Union Pac. R. R. Co.* v. *Daniels*, 152 U. S. 688, 689; *Hough* v. *Railway Co.*, *supra; Wabash Ry. Co.* v. *McDaniels*, *supra; Vandusen* v. *Letellier*, 73 Mich. 502; *R. & D. R. R. Co.* v. *Norment*, 84 Va. 176.

The authorities are harmonious on this question.

It is well settled by the authorities that the master must provide his servant with a reasonably safe place in which to perform his work, and after having furnished such a place to use due diligence and care to keep it in a safe condition. See last cases cited, also Bailey on Liability of Master, p. 34; Sherman and Redfield on Neg. sec. 194, and cases cited; Thompson on Neg. p. 972, sec. 3, and the numerous cases cited in note 1.

In *Union Pacific R. R. Co.* v. *Daniels, supra*, Mr. Chief Justice Fuller quotes with approval the following from the opinion of Mr. Justice Brewer in the case of the *Baltimore & Ohio R. R. Co.* v. *Baugh*, 149 U. S. 684, to wit: "A master employing a servant impliedly engages with him that the place in which he is to work and the tools and machinery with which he is to work, or by which he is to be surrounded, shall be reasonably safe. It

is the master who is to provide the place and the tools and the machinery, and when he employs one to enter into his service he impliedly says to him that there is no danger in the place, the tools and the machinery, but such as is obvious and necessary."

Where the nature of the business is such as to require it, the law also imposes upon him the duty of making and promulgating suitable rules. *Abel* v. *D. & H. Co.*, 103 N. Y. 581; *Cooper* v. *The Central R. R. Co.* 44 Ia. 135; *Railway Co.* v. *Henderson,* 37 Ohio St. 549; *C. B. & Q. R. R.* v. *McLallen,* 84 Ill. 109; Bailey's Mast Liab. p. 72; *Sherman & Redfield* on Neg. sec. 202.

There is no distinction in principle between the duty to be exercised on the part of the master as to the safety of his machinery and the safety of his premises. Bailey's Master's Liability, p. 34–108. *Bessex* v. *Chic. & Northwestern R. R. Co.*, 25 Wis. 482.

Therefore the decisions quoted relating to the former are equally applicable to the latter.

Tested by the well settled rules announced, does the undisputed evidence show negligence upon the part of the defendant?

The deceased was employed as a laborer in the car shops of the defendant. One Shubien was the master mechanic and Joseph Stahr was the foreman of the repair shops of the defendant. It was the duty of Stahr to see that the cars were repaired, to keep the employees of the defendant at work at their proper places, and carry out the orders of the master mechanic. He had a right to direct the movements of the men and give them orders what to do.

Ben Kilpatrick was foreman of the switchmen in the train department, and had been for many years. Under the instructions of Mr. Lee, the yard-master, he directed

the switchmen and engineers, who were subject to his orders.

The shop men had nothing to do with the train department.

There were numerous switch tracks. Nos. 1 and 2 were repair tracks. The switchmen had no other connection with the repair department, except when cars were marked for repair by the car inspector, they moved them to places for repair. Sometimes the cars needing repairs would be placed on the repair tracks 1 and 2, but frequently on other of the numerous switch tracks. Frequently there were repairs to be made which required men to go under the cars. It was customary while cars were being repaired by men under them to couple others thereto. Kilpatrick, the foreman of the switchmen, stated on cross-examination that "I had an idea that I could come up and make that coupling and not move that car with the man under it. It had been done in the yard every day. I was working under a man who had ordered me to hurry up. * * * I know that it is dangerous for men to repair cars on the track where they are liable to meet with other cars, but I know that it was done right along. I have seen men under cars in different places during my time of switching.there. It was frequently done."

No danger signal flags were placed upon cars when being repaired by men under them until after the deceased was killed.

On the day the deceased received his fatal injury Stahr, the foreman of the repair shops, whose orders the deceased was subject to, directed him and one Fowers to repair a car standing on a switch track, and while in obedience to such directions he was engaged under the car in repairing the same, a locomotive with a caboose attached, under the direction of Kilpatrick, was backed against the car

under which the deceased was so engaged, with such force as to move said car and inflict upon the deceased the injury which caused his death.

Before the moving locomotive and caboose reached said car, Kilpatrick was warned by George C. Rice, an employee of the defendant, that the deceased was under the car, whereupon he stopped the locomotive and after stooping down and looking under the car signalled the engineer to move on. This was accordingly done, notwithstanding the fact that he knew the deceased was under the car, and resulted in the injury and death of the deceased. In explanation of this action, on cross-examination by plaintiff's attorney, he said: "I had an idea I could come up and make the coupling and not move the car. It had been done in the yard every day. I knew myself it was taking a great risk, but I knew it was done right along. I had no more idea of hurting this man than I have of hurting anybody today."

It is clear from this evidence that a position of an employee beneath a car, engaged in its repair, under a system which permits couplings to be made with said car, or switching to be done on the track where it is located, while being so repaired, is a very dangerous and unsafe place to work in. It is evident, however, that the dangerous character of such a position is not inherent in the position itself, or a necessary and unavoidable attendant of the occupation of men engaged in working under the car, but is attributable solely to the attendant system of coupling onto the car and switching on the track where it is located, when men are working under it. It was the duty of the defendant to use proper care, diligence and skill to provide the deceased with a reasonably safe place in which to perform his duties. The place in which the deceased was performing his duties, and to which he went under the

directions of the foreman, placed over him by the defendant, could have been made absolutely safe by placing the car upon a switch track, and adjusting the rails at the switch board so as to exclude therefrom moving locomotives or cars. The place could have been made much less dangerous than it was by placing a danger flag upon the car while being repaired, or by the establishment of a system which, instead of permitting coupling with said car to be made while any of its employees were engaged under the same making repairs, forbid the same from being done.

Again, it is the duty of the master, when the nature of the business requires it, to make and promulgate rules for the protection of its servants, and as the nature of the business of the car repairers of the defendant, disclosed by the evidence, was such as to require the making and promulgating of a rule, for the protection of such employee, requiring the placing of a danger flag upon cars, when the repairers were under them, and forbidding any coupling to be done by a locomotive while they were so engaged, the defendant was in fault in not making and promulgating such a rule. That no such rule was in existence is evident from the facts disclosed by the testimony. But even if there was such a rule, the evidence shows such a continuous and habitual disregard of it for such a long period, as to amount to negligence on the part of the defendant, for it is the duty of the master, whether he be a natural person or an incorporated body, to use due care and diligence, after the making and promulgating of a necessary rule, to have it enforced.

The evidence clearly shows that the defendant did not properly discharge the duties which he owed to the deceased, under the contract of employment, and that it was grossly negligent in that regard.

2. Were Kilpatrick and the deceased fellow-servants?

It is clear from the evidence that it was gross negligence on the part of Kilpatrick to allow the locomotive and caboose to be backed against said car, notwithstanding the defendant had customarily permitted it to be done. It is claimed that this negligence was the negligence of a fellow-servant of deceased, and that therefore the defendant is not responsible.

There are two answers to this: 1st. They were not fellow-servants; 2d. Even if they were the injury would not have occurred, or at least the chances of its occurrence would have been greatly less had the defendant faithfully performed the duties, before mentioned, which it owed to the deceased, and as its negligence in this regard contributed to and had a share in causing the injury, it is liable, notwithstanding the negligence of a fellow-servant of the deceased also contributed in causing the injury. This proposition is fully sustained by the following authorities, and there is none holding to the contrary.

In the case of the *Grand Trunk R. R. Co.* v. *Cummings*, 106 U. S. 702, Mr. Chief Justice Waite, in the opinion said: "In the instruction which was given we find no error. It was in effect that if the negligence of the company contributed to, that is to say, had a share in producing, the injury, the company was liable, even though the negligence of a fellow-servant of Cummings was contributory also. If the negligence of the company contributed to, it must necessarily have been an immediate cause of the accident, and it is no defense that another was likewise guilty of wrong. *Inland Co.* v. *Tolson*, 139 U. S. 558 and cases cited. Bailey's Master's Liabilities, on p. 439, states the rule thus: "The principle is universal that, where the negligence of the principal and that of a fellow-servant together produce injury, the prin-

cipal is liable therefor. The liability proceeds upon the ground of concurring negligence. The mere fact of the concurrence of one who stands in the relation of a fellow-servant to the one receiving the injury, does not exonerate the master from his original fault."

This text is supported and illustrated by numerous authorities referred to in the notes. Sherman & Redfield on Neg. sec. 187.

In the case of *Handly* v. *Daly Mining Co.*, 15 Utah, 185, the same rule was applied, and ably supported in the opinion delivered by Mr. Justice Miner. See also *Wright* v. *Southern Pac. Co.*, 14 Utah, 398, in which Mr. Justice Bartch announced the same doctrine.

The doctrine that the master is not liable for an injury to his servant caused by the negligence of a fellow-servant, was announced first in 1837, in the case of *Priestly* v. *Fowler*, 3 Meeson & Welsby, 1. In that case, Lord Abinger, in granting the motion for arrest of judgment, said: "It is admitted there is no precedent for the present action by a servant against a master. We are therefore to decide the question on general principles."

The general principles, governing the case, announced, without any limitations, or even without the suggestion of limitations, was that a master was not liable to his servant for an injury caused by the negligence of a fellow-servant.

The first case decided in this country is the case of *Murray* v. *Railroad Co.*, 1 McMullen, 385. The general principles announced in *Priestly* v. *Fowler*, were applied in this case without any limitation. The court say, "It is admitted he (the servant) takes upon himself the ordinary risks of his vocation: why not the extraordinary ones? Neither are within his contract."

The exemption of the master from liability was based upon the contract of employment.

The next case deciding the question is the case of *Farwell* v. *Railroad Co.*, 4 Metcalf, 49. The general rule announced in *Priestly* v. *Fowler* and *Murray* v. *Railroad Co.* (which cases were quoted by Chief Justice Shaw in the Farwell case) was followed, as appears from the opinion, p. 60, "Because, (as stated) *the implied contract* of the master does not extend to indemnifying the servant against the negligence of anyone but himself; because the person suffering does not stand towards him in the relation of a stranger, but is one whose rights are regulated by contract expressed or implied."

Mr. Chief Justice Shaw, notwithstanding the general principle announced in *Priestly* v. *Fowler*, was applied in the Farwell case, cautioned against any hasty conclusions, as to the application of the rule, in the following language: "In coming to the conclusion that the plaintiff, in the present case, is not entitled to recover, considering it as in some measure a nice question, we would add a caution against any hasty conclusion as to the application of this rule to a case not fully within the same principle. It may be varied and modified by circumstances not appearing in the present case, in which it appears, that no willful wrong or actual negligence was imputed to the corporation, and where suitable means were furnished and suitable persons employed to accomplish the object in view. We are far from intending to say that there are no implied warranties and undertakings arising out of the relation of master and servant. Whether, for instance, the employer would be responsible to an engineer for a loss arising from a defective or ill-constructed steam engine; whether this would depend upon an implied warranty of its goodness and sufficiency or upon the fact of willful misconduct, or gross negligence on the part of the employer, if a natural person, or of the superintendent or

immediate representative and managing agent, in case of an incorporated company — are questions on which we give no opinion."

It was also held that, "Where a master uses due diligence in the selection of competent and trusty servants, and furnishes them with suitable means to perform the service in which he employs them, he is not answerable to one of them, for an injury received by him in consequence of the carelessness of another while both are engaged in the same service."

Since these decisions the duties which the master owes to his servants, under the contract of employment, as in this opinion, has already been shown, have been fully announced and firmly established, and the general rule announced in them has been greatly modified.

Among the many exceptions to the general rule, sustained by many of the courts of this country, and the only one necessary to consider in the case at bar, is aptly expressed in the principal opinion, delivered by Lord Chancellor Chelmsford in the House of Lords, in the case of the *Bartenshill Coal Co.* v. *McGuire*, 3 Macq. 307. After referring to the general doctrine announced in *Priestly* v. *Fowler*, and recognized subsequently in other cases in the English courts, he said: "In the consideration of these cases it did not become necessary to define with any great precision what was meant by the words 'common service' or 'common employment,' and perhaps it might be difficult beforehand to suggest any exact definition of them. It is necessary, however, in each particular case to ascertain whether the fellow-servants are fellow laborers in the same work, because, although a servant may be taken to have engaged to encounter all risks which are incident to the service which he undertakes, yet he cannot be expected to anticipate those which may happen to him in occasions

foreign to his employment.    Where servants, therefore, are engaged in different departments of duty, an injury committed by one servant upon the other, by carelessness or negligence in the course of his peculiar work, is not within the exception, and the master's liability attaches in that case in the same manner as if the injured servant stood in no such relation to him."

The foregoing was quoted with approval in *Hough* v. *Railway Co.*, 100 U. S. 221–222.

The same exception is expressed in the case of the *Northern Pac. R. R. Co.* v. *Hambly*, 154 U. S. 157, thus:

"If the departments of the two servants are so far separated from each other that the possibility of coming in contact and hence of incurring danger from the negligent performance of the duties of such other department, could not be said to be within the contemplation of the person injured, the doctrine of fellow service should not apply. In this view it is not difficult to reconcile the numerous cases which hold that persons whose duty it is to keep railroad cars in good order and repair are not engaged in a common employment with those who run or operate them."

This court has frequently announced the same exception.

In the case of *Webb* v. *Railway Co.*, 7 Utah, 367, the trial court, in the charge, said: "If the jury find that the death of Louis T. Webb was caused, without fault or negligence on his part, by the negligence of the engine-driver or other person in charge of said freight train, and that such engineer or other person was at the time engaged in a separate and distinct department of service from that in which said deceased was engaged, then you will find a verdict for the plaintiff."

20 Utah—15.

This instruction was sustained.

In the case of *Daniels* v. *Railway Co.*, 6 Utah 357, the exception is expressed in this language:

"However various, the decisions agree that the weight of authority is that, in order to constitute servants of one master fellow-servants, within the rule of *respondeat superior*, they must be engaged in the same line of work; be under the control of the same foreman; be employed and discharged by the same head of the department under which they work; that they labor together in such personal relations that they can exercise an influence upon each other promotive of proper caution in respect of their mutual safety; that they shall be at the same time of the injury directly operating with each other in the particular business in hand, or that their mutual duties shall bring them into co-association; that they may exercise an influence upon each other promotive of proper caution, and be so situated in their labor, to some extent, to supervise and watch the conduct of each other as to skill, diligence and carefulness."

In this case a car inspector was held not to be a fellow-servant with the train brakeman.

This language of the Daniels case was quoted by Chief Justice Zane, in support of the same doctrine, in the case of *Dryburg* v. *Mercur Gold Min. Co.*, 18 Utah, 410, 55 Pac. Rep., 367.

The Daniels case was also referred to as supporting a like doctrine in the case of *Webb* v. *Railway Co.*, *supra*, and in *Armstrong* v. *Railway Co.*, 8 Utah, 420.

In the last case it was held in an opinion rendered by Mr. Chief Justice Zane, and concurred in by Justices Miner and Blackburn, that a "foreman of a crew employed in switching cars in the yards of a railway company, who received general orders from the yardmaster

before commencing work, and afterwards directed his crew in their operation, is not a fellow-servant of a number of another crew switching in the same yards under the direction of another foreman, nor a fellow-servant of his own immediate foreman." See, also, *Openshaw* v. *Railway Co.*, 6 Utah, 137.

The case at bar was before this court on a former appeal, involving the same question as the one now under consideration, but the evidence which the record then contained was not as conclusive on the question as that in the present record. It was then held, Justice Miner delivering the opinion, as follows: "From the testimony in the case, we are satisfied that Kilpatrick was not a fellow-servant of the deceased, but was then engaged in a different kind and department of service, and was not in the same kind of employment and was under the orders of different masters." This was concurred in by the other three judges who sat in the case. See 7 Utah, 307. An appeal was taken to the Supreme Court of the United States, and the decision of that court on the appeal is reported in 160 U. S. 438. And although defendant's counsel, made, in that court, the point that the evidence showed that the deceased and Kilpatrick were fellow-servants, the decision of this court was not reversed on that ground, but on quite a different one, notwithstanding the evidence before that court, upon the question, was not as strong as that presented to us by the present record.

The evidence shows that there were two separate departments. The train department and the repair department. Each was under the charge and direction of separate agents of the defendant. The duties of the employees in the repair department were separate and distinct from the duties of the employees of the train department.

In placing cars in position to be repaired the employees of both departments were temporarily brought together while engaged in their respective duties, but were never engaged together in performing the same duties. Their respective duties were entirely separate. The duties of those employed in the train department being confined to switching cars, and that of the others to that of repairing such cars as needed repairs.

From the evidence, viewed in the light of the authorities quoted, we have no doubt but that the deceased and Kilpatrick were not fellow servants.

Defendant's counsel rely upon the case of *Stephani* v. *Southern Pac. Co.*, decided by this court at the January term in 1899.

In that case this court cites the cases of *Webb* v. *R. R. Co.*, *supra;* *Armstrong* v. *Oregon Short Line*, *supra*, and *Openshaw* v. *Railroad Co.*, *supra*, and say that, " The facts in this case (the Stephani case) differ somewhat from the cases referred to from Utah. * * * The plaintiff and engineer were in the same department of labor working for the same object, under a common master."

The facts in this case and the question under consideration are essentially different from those involved in the Stephani case.

In regard to the question of contributory negligence on the part of the deceased, the evidence shows that it was the custom for the employees to go out on the switch tracks while switching was going on. Rice, who was engaged in the repair shops during the year 1888, (the deceased was injured either on the 12th or 13th of September of that year) testified that "during the whole time I was there they would send men out on the switch tracks in different parts of the yard to do repairs." Kilpatrick testi-

fied that the deceased and Mr. Fowers sometimes went
from the repair shops out on the track to repair cars; that
he had been for the last eighteen years engaged as switch-
man, and had seen men under cars at different places dur-
ing his time of switching there; that coupling on to cars
under which men were engaged in repairing was done
right along.

There is no direct evidence that deceased knew these facts
but it is inferable only from their frequent occurrences;
nor is there any evidence that he, except on the occasion of
his injury, was ever engaged under any of the cars on the
switch tracks, nor is there anything in the evidence from
which that fact can be inferred.

It is clear from the evidence that no danger flag was
placed upon the car under which the deceased was in-
jured, and that he must have been aware of that fact;
that his position under the car was such that he could not
see the approach of the engine, without changing his posi-
tion under the car. Rice testified that the defendant
company did not furnish flags at that time, and there
were none in the shops, and had not been for months
before. Kilpatrick testified that the company never put
flags out during his time of switching until after this acci-
dent occurred.

The deceased was ordered to repair the car, and it was
necessary for him to go under it in order to carry out the
order. His place under the car was not necessarily or
inherently dangerous, and therefore he could not, and
evidently did not anticipate such recklessness as that
causing his death. At that time the company had fur-
nished no danger flags, or made any rule requiring their
use, but had followed a system dispensing with their use.
The deceased, when he obeyed said order, had a right to
presume that he would not be exposed to unnecessary

danger, and that the defendant had used proper care to render the place where he was at work reasonably safe. Under these circumstances we do not think that such contributory negligence on the part of the deceased, as is necessary to warrant the granting of a non-suit on that ground was shown.

It is only when the negligence of the plaintiff clearly appears from the evidence, that the court is justified in withdrawing the question from the jury.

But even if it were clear that the deceased was guilty of contributory negligence in working beneath the car under the circumstances, and assumed the risk of the negligence of the other employees, still it does not follow from the evidence, that the defendant is not liable.

It appears that Kilpatrick, before the locomotive and caboose had reached the car under which the deceased was at work, was warned by Rice, who was standing near by, for the purpose of connecting the air break when the car should be repaired and coupled to the train, that the deceased was underneath the car, whereupon Kilpatrick stopped the locomotive, stooped down and looked under the car, and notwithstanding, as stated by him, he knew that the deceased was under the car, and knew the danger of coupling onto it, he gave the signal to the engineer to back up for the purpose of making the coupling.

The warning of Rice, therefore, served the purpose of apprising Kilpatrick of the danger as effectually as a danger flag would have done, and after such warning it was gross negligence not to act upon it. His recklessness was the proximate cause of the injury, but for which the injury would not have happened, notwithstanding the alleged negligence of the deceased. To this proximate cause the defendant contributed by its failure in the particulars hereinbefore stated, and is therefore liable.

Each of the instructions, from one to eleven inclusive, given by the trial court on its own motion, was excepted to by defendant's counsel, and the giving of them is assigned as error. These instructions, except the tenth, related to the questions of negligence, fellow-servants, and the burden of proof.

It is not necessary to pass upon these exceptions, because the evidence before this court is undisputed, and therefore, as under the evidence, and the legal deductions therefrom, the plaintiff was entitled to recover, the trial court would have been justified in instructing the jury to find for the plaintiff, and in their deliberations to consider and pass upon the question of damages only.

As the verdict on the merits is such as the trial court might have properly directed, the exceptions to the instructions are immaterial.

The case of the *Delaware R. R. Co.* v. *Converse*, 139 U. S. 469, fully sustains the views just expressed. The court in that case say: "Undoubtedly, questions of negligence, in actions like the present one, are ordinarily for the jury, under proper directions as to the principles of law by which they should be controlled. But it is well settled that the court may withdraw a case from them altogether and direct a verdict for the plaintiff or the defendant, as the one or the other may be proper, where the evidence is undisputed or is of such conclusive character that the court, in the exercise of a sound judicial discretion, would be compelled to set aside a verdict returned in opposition to it. *Phœnix Ins. Co.* v. *Doster*, 106 U. S. 30, 32; *Griggs* v. *Houston*, 104 U. S. 533; *Randall* v. *Baltimore & Ohio Railroad Co.*, 109 U. S. 478, 482; *Anderson County Commissioners* v. *Beal*, 118, U. S. 227, 241; *Schofield* v. *Chicago & St. Paul Railway Co.*, 114 U. S. 615, 618. 'It would be an idle

proceeding,' this court said in *North Penn. Railroad Co.* v. *Commercial Bank*, 123 U. S. 727, 733, 'to submit the evidence to the jury when they could justly find only in one way.'"

The tenth instruction was on the subject of damages. The part to which objection is made in defendant's brief is as follows: "Determine in the first place the number of the family, the number of children and ages of the family, and determine the age of deceased, his ability to earn wages and provide for the family, determine it from your own experience. You can judge as to what his expectancy may have been; and from all these circumstances determine what, in a pecuniary sense, this family may have lost, by the loss of the husband, and the father; and determine it in a business way, and without sentiment, just how much in a pecuniary sense they ought to recover for the injury that they have sustained."

The exception taken at the trial was a general one, and does not specify the ground of the objection.

In the case of *Wilson* v. *Sioux Consolidated Min. Co.*, 16 Utah, 392–398, Justice BARTCH, in the opinion, said: "Errors relating to the instructions of the court were also assigned, but, in the absence of proper exceptions, we cannot consider them. 'An exception, to be of avail in an appellate court, should, in a case where any portion of the charge is correct, be strictly confined to the objectionable matter, and the judge's attention called thereto at the time of the delivery of the charge, so that an opportunity may be afforded him to make a correction.'"

This instruction was held good in this case when before this court on the former appeal. 7 Utah, 309.

This disposes of all the objections urged by defendant's counsel.

It is ordered that the judgment of the court below be affirmed, with costs.

BARTCH, C. J., concurs in the result.

I concur in the judgment as announced by Mr. Justice Baskin. I am of the opinion that no negligence or contributory negligence, was chargeable to the deceased. I am also of the opinion that the defendant was negligent, and that the deceased and Kilpatrick, at the time of the injury complained of, were engaged in separate and distinct departments of service, as established by the defendant, and that each was under the order and control of a different master, and that they were not fellow-servants.

MINER, J.