ABRAM JENKINS, Respondent, v. MAMMOTH MINING COMPANY, a Corporation, Appellant.

No. 1340.    (68 Pac. 845).

1. **Master and Servant: Negligence: Fellow-Servants.**
Revised Statutes, section 1343, provides that all persons who, while in the service of any one, are in the same grade of service, and are working together at the same time and place and to a common purpose, neither of such persons being intrusted by such employer with any superintendence or control over his fellow-employees, are fellow-servants with each other. *Held*, that a miner is not a fellow-servant with one whose duty it is to manage and operate a cage by which the miners are conveyed in and out of the mine.[1]

---

[1] Pool v. Southern Pac. Co., 20 Utah 210, 58 Pac. 326; Braegger v. Railway Co., 24 Utah 391, 68 Pac. 140.

24 Utah—33

**2. Same.**

A miner is not a fellow-servant with one employed as a "tool carrier," whose only duty is to take sharpened tools into the mine and throw them off at the various levels, and bring up the dull ones.

**3. Same: Proximate Cause: Instruction Properly Refused Under the Evidence.**

In an action by a miner for injuries owing to the cage in which he was being lowered into the mine coming into contact with certain "chairs" projecting into the shaft, which chairs were used to steady the cage when it stopped at a level, and which, when in proper order, automatically fell back out of the way when the cage was lifted from off them, the evidence showed that it was the duty of the "cage rider" who managed the cage to make a trip before taking miners into the mine, in order to see that the chairs were in order, but that on the occasion in question he failed to perform such duty, and that the chairs had been out of order for some months, so that they would not automatically drop back. It appeared that a servant known as a "tool carrier" had just before the accident been down the shaft with the cage, but he testified that he did not remember whether he had fastened the chairs under the cage, and the evidence did not show that the tool carrier or the cage rider were fellow servants. *Held,* that it was proper to refuse to instruct that there could be no recovery, though the appliances were defective, if the proximate cause of the injury were the negligence of a fellow servant, and if the accident would not have happened if the cage rider had made the trip to see that the chairs were in proper condition.

**4. Same: Concurring Negligence of Master: Liability.**

Where an injury is the result of two concurring causes, and the master is responsible for or contributed to one of them, he is not exempt from liability because a fellow-servant who is responsible for the other cause may have also been culpable. · The servant assumes the risk and negligence of a fellow-servant, but not that of the master.[2]

**5. Same: Exception to Instruction: Appeal.**

An instruction not excepted to on the trial, can not be considered on appeal.

[2]Handey v. Mining Co., 15 Utah 176, 49 Pac. 295, 62 Am. St. Rep. 916; Wright v. Southern Pac. Co., 14 Utah 383, 398, 46 Pac. 374, 377; Pool v. Southern Pac. Co., 20 Utah 210-221; 58 Pac. 326.

**6. Same: Exception: When Regarded.**
Under Revised Statutes, section 3285, providing that no exception shall be regarded unless the decision excepted to is material and prejudicial to the substantial rights of the party excepting, an exception to the overruling of an objection to a question put to a witness was not well taken, where the question was not answered, and it appears from the other evidence that, if it had been, it would have been harmless.

**7. Supreme Court Rule 10.**
Errors not presented in the brief are deemed abandoned.

(Decided May 3, 1902.)

Appeal from the Fifth District Court, Juab County.—*Hon. T. Marioneaux*, Judge.

Action to recover damages for personal injuries alleged to have been caused by the negligence of the defendant. From a judgment in favor of the plaintiff, the defendant appealed.

AFFIRMED.

*Messrs. Bennett, Sutherland, Van Cott & Allison* for appellant.

*Messrs. Powers, Straup & Lippman* for respondent.

BASKIN, J.—The complaint herein alleges that plaintiff was twenty-three years of age November, 1900, and was in defendant's employ and earning $2.50 per day as a common miner in defendant's mine, and working on the 1,800 level of the mine. The complaint then alleges "that, in going to and from his said place of work on the 1,800 level of said mine, plaintiff was transported by said defendant through a certain shaft by means of an elevator, more commonly called a 'cage,' which said cage was raised and lowered by means of machinery in charge of an engineer in the employ of said defendant; that in transporting plaintiff as aforesaid to his said work, by

means of said cage as aforesaid, it became and was the duty of said defendant to lower the same with care and caution, and at a reasonably safe rate of speed, and keep and maintain said shaft, when plaintiff was being lowered to his said work, free and clear of obstruction, so that said cage could safely descend, and particularly to keep and maintain said shaft free and clear of certain 'chairs' used to rest said cage upon at certain levels of said mine, and to keep said chairs in reasonably safe working order. And it became and was the duty of defendant, before it lowered men into said mine by means of said cage, to raise and lower the said cage, and ascertain if said shaft was clear." The complaint, in substance, further alleged that defendant negligently failed to perform these duties, and that through and by means of such failure the plaintiff, while being lowered on said cage to his place of work by said defendant, was injured, etc. The answer denied the alleged negligence. The jury returned a verdict in favor of the plaintiff for $7,000, and judgment for said sum and costs was rendered against the defendant. From this judgment the appeal is taken.

As stated in appellant's brief, "the important question in the case" presented by the exceptions and assignments of error "is whether the plaintiff and Daniel Knotts were fellow-servants." It appears from the evidence that the plaintiff was, and had been for a considerable time immediately before his injury, in the service of the defendant as a common miner on the 1,800-foot level of the mine; that there was a shaft of the defendant's mine of the depth of 1,900 feet, and during the time plaintiff was in defendant's service he had been habitually conducted through said shaft to and from the place where so engaged, on the cage of an elevator which was operated by, and was under the control of, the said Daniel Knotts, an employee of the defendant, styled the "cage rider;" that at various levels of the mine there are chairs, which are so constructed that they can be projected into the shaft to support

and steady the cage while being loaded and unloaded at the points where the chairs are located; that the chairs were so weighted that when in proper working order they would, upon the cage being lifted therefrom, fall out of the shaft, and remain there, and leave the passage unobstructed until again projected into the shaft; that Knotts knew for two months before the accident that the chairs on the 800-foot level were out of order, and were liable, as they had done before, during the months they were out of order, to stay in the shaft upon the removal of the cage therefrom, and not fall back, as designed to do; that it was the custom and duty of Knotts to go down the shaft with the cage, and see that the passage was clear, before conducting the employees of the defendant on the cage down to the places in the mine where they were to work, but notwithstanding he knew that the chairs on the 800-foot level were out of order, and liable not to fall out of the shaft, he neglected, on the occasion of the accident in question, to perform that duty, and started to lower the plaintiff and ten other miners at a speed of about 1,900 feet per minute, when the cage struck the chairs at the 800-foot level, and the plaintiff was thereby injured.

1. Appellant's counsel contend that under the facts disclosed by the evidence, and the provisions of section 1343, Revised Statutes 1898, the plaintiff and Daniel Knotts were fellow-servants. Said section provides that all persons engaged in the service of any person, firm, or corporation, foreign or domestic, doing business in this State, "and who, while so engaged, are in the same grade of service and are working together at the same time and place and to a common purpose, neither of such persons being intrusted by such employer with any superintendence or control over his fellow-employees, are fellow-servants with each other; *provided,* that nothing herein contained shall be so construed as to make the employees of such employer fellow-servants with other employees engaged in any other department of service

of such employer. Employees who do not come within the pro-visions of this section shall not be considered fellow-servants." The plaintiff and Knotts were employees of the defendant, and neither was intrusted by their employer with superintendence or control over the other; but in view of the evidence, and the provisions of said section, were they engaged in the same service, and working together at the same time and place, to a common purpose? Knotts was employed in running the eleva-tor, while the occupation of the plaintiff was that of a miner on the 1,800-foot level of the mine. They were not, there-fore, engaged in the same grade of service. Knotts' employ-ment was not that of a miner, and he was not engaged in working with the plaintiff on the 1,800-foot level; nor was the plaintiff engaged at work when injured, but was merely being conducted to his place of employment. They were not, there-fore, engaged in working together at the same time and place. The purpose which Knotts worked to accomplish was conduct-ing into and out of the mine men and materials, while the plaintiff's work was directed to the purpose of extending the underground workings of the mine, and developing and ex-tracting ore. As, therefore, the labor of each was, at different times and places, directed to the accomplishment of separate results, the plaintiff and Knotts were not, within the meaning of said section of the Revised Statutes, working together at the same time and place to a common purpose. Knotts was conductor of the elevator, and the plaintiff had no more con-trol over him in respect to the management of the elevator than a passenger in a railroad car has over the conductor of a train, nor had he any better means than a passenger to protect himself against the negligent management of said elevator. In the following cases decided by this court, the injuries oc-curred after the passage of section 1343 of the Revised Stat-utes of 1898, to-wit:   Pool v. Southern Pac. Co., 20 Utah 210, 58 Pac. 326; Braegger v. Railway Co., 24 Utah 391, 68 Pac. 140.   In the former case, while a laborer in the car-

shops of the railroad was under a car upon a side track, and engaged in repairing the same, the foreman in the switch department backed a locomotive against the car which was being so repaired, and injured the laborer; and we held that the laborer and foreman were not fellow-servants. In the latter case, a servant, while engaged, under the direction of the section foreman, in unloading a box car which was standing on a side track, was injured by the engineer of a freight train running some cars against the box car. The trial court, after giving in its charge to the jury said section of the Revised Statutes, added, "If, therefore, you find from the evidence that the plaintiff's injuries, if any, were caused by the negligence of a fellow-servant of his, as above defined to you, the plaintiff can not recover." The jury returned a verdict for the plaintiff, and we affirmed the judgment rendered thereon. Under the evidence and the provisions of said section, it is clear that the plaintiff and Knotts were not fellow-servants.

2. The defendant excepted to, and assigns as error, the refusal of the court to give the twenty-third instruction requested by it, and which is as follows: "If you believe by a preponderance of the evidence that, at the time of the injury in question to plaintiff, plaintiff was riding on defendant's cage to go to his work, and this was the usual method pursued by the plaintiff and the other miners in going to and coming from their work, and that John Smith took down the cage and set the chairs into the shaft just before, and then forgot to remove the chairs, and the cage was then taken to the top, and that Knotts did not make a round trip to see that the shaft was clear, and that, while plaintiff was so riding on the cage, Knotts operated the same and controlled its action, and Knotts had no control over the plaintiff, except to carry him in the cage to the place of destination, and that the plaintiff was injured while so riding on the cage, then the plaintiff and Knotts and John Smith were fellow-servants." It appears from the undisputed testimony of John Smith, a

witness for defendant, that he was not engaged in working as a miner with the plaintiff, but was employed by defendant, simply, as a "tool carrier," and, as such, his only duty was to take the sharp tools down into the mine on the elevator in company with the "cage rider," and throw them off at the various levels for the use of the miners, and bring up the dull ones; that, in a few minutes before the accident, he took, without the right or authority to do so, tools down on the cage alone, for the shift that was going to work soon thereafter. He was not on the cage at the time of the accident. He and the plaintiff were not, therefore, engaged in the same grade of service, and working together at the same time and place, and to a common purpose, and were not, under the facts disclosed, and the provisions of the Revised Statutes, fellow-servants; nor were the plaintiff and Knotts and Smith fellow-servants.

3. The defendant excepts to, and assigns as error, the refusal to give the twenty-seventh instruction requested by the defendant, which is as follows: "The law is that, where the promoting cause of the injury is the negligence of a fellow-servant, no recovery can be had, even though the machinery and appliances are defective. For instance, even where the machinery is defective, so that otherwise a recovery might be had if an injury resulted therefrom, in the case of an injury from the negligence of a fellow-servant no recovery can be had. Therefore, if you believe from the evidence that this accident never would have happened to the plaintiff if Knotts had made the round trip before lowering the plaintiff and others into the mine, then the plaintiff is not entitled to recover, even if you may further believe from the evidence that the chairs in question were defective, in not automatically going back to their place and leaving such shaft clear when such chairs were not locked." It appears from the evidence that: "The chairs can be held into the shaft by a catch so that they will not fall back, even when the cage

is removed, but the chairs should fall back when the cage is removed if not fastened. The key to hold the chairs in place can be fastened with the foot. The cage rider handled the chairs with a lever, and locked them with a key or pin. When the key is removed, the chairs will fall back out of the shaft if in order. It is the cage rider's duty to remove the chairs from the shaft when he raises the cage." John Smith, the tool carrier, testified "that it was not his duty to take the cage down alone, nor unless the cage rider was along; that Knotts was late, and that he (Smith), several minutes before the accident, took the cage down to keep him out of trouble; no one told him to do so; that it was the custom, before lowering men, to take the cage down to the bottom and then back, and that had been the rule in the mine for seven and a half years, while he had been there; that he could not remember whether he put the catch behind the lever to hold the chairs under the cage, but he did not see whether the chairs went from under the cage, or not, when the cage was raised." There was no evidence tending to show that either Knotts or Smith and the plaintiff were fellow-servants; but, to the contrary, it appears, as a matter of law, from the uncontradicted evidence, that the plaintiff was not a fellow-servant with either Knotts or Smith. The instruction so requested was not, therefore, applicable to the undisputed facts, and was properly rejected; nor did it properly state the law applicable to the evidence. There was no evidence tending to show that John Smith fastened the cage in the shaft. The only evidence on that matter was his statement that he could not remember whether he did so. There was, however, evidence which tended to show that the chairs had been out of order for months, and were liable not to fall back as designed. It was a duty which the defendant owed to its servants, under the implied contract of employment, not only in the first instance to furnish reasonably safe appliances to conduct them to and from the respective places where they engaged in working, but to use due and reasonable

care in keeping the appliances reasonably safe. Where appliances of the employer in use by the servant are suffered to become and remain dangerously out of repair for months, that fact should be submitted to the jury on the question of the negligence of the master, when there is evidence tending to show that the defective appliances contributed to, and had a share in producing, the injury complained of by the servant. It is clear from the evidence that, notwithstanding the cage rider's negligence in failing to lower the cage and ascertain whether the shaft was clear before lowering the plaintiff and the other men, the accident would not have happened if the chairs had not remained in the shaft after the cage was lifted from them; neither would it have happened if the cage rider had performed his duty. There was evidence tending to show that the chairs so remained in the shaft because they were out of working order, and had been so for two months. From the evidence the jury might have properly found, and may have found, that the defendant was guilty of negligence in permitting the chairs to remain out of working order for two months and that on account of their defective condition they failed to fall out of the shaft upon the removal of the cage, and that the proximate cause of the injury was the concurring negligence of the defendant and Knotts. This court held in the case of Handley v. Mining Co., 15 Utah 176, 49 Pac. 295, 62 Am. St. Rep. 916, in an opinion by Justice Miner, that: "Where an injury is the result of two concurring causes, and the master is responsible for or contributed to one of them, he is not exempt from liability because a fellow-servant, who is responsible for the other cause, may have been also culpable. The servant assumes the risk and negligence of a fellow-servant, but not that of the master." In Wright v. Southern Pac. Co., 14 Utah 383, 398, 46 Pac. 374, 377, in an opinion by Justice Bartch, it was held that, "where the negligence of the employer and that of a fellow-servant combine and produce an injury to a servant, the employer will

be liable in damages to the injured servant." These cases were followed in the case of Pool v. Southern Pac. Co., 20 Utah 210-221, 58 Pac. 326. The instruction so requested was improper, because, in effect, it assumed that the proximate cause of the accident was the negligence of a fellow-servant, and took from the jury the consideration of the question of the defendant's concurrent negligence.

4. We cannot consider the objection to the seventh instruction given, because the defendant did not except to it at the trial.

5. John Smith having testified, on behalf of the defendant, that several minutes before the accident he took the cage down the shaft and back to the station, from which it starts when sent down the shaft, he further stated, without objection, on cross-examination, that when he took the cage to go down there was no one at the station, "no shift boss, no cage rider, and no station tender; that there should have been a station tender and cage rider there;" that the cage stood there alone; and that that was the place where the men got on the cage to go down the mine. After having so testified without any objection being made by defendant's counsel, he was asked by plaintiff's attorney the following question: "Anybody could get upon it [the cage] and signal?" To this question defendant's attorney objected on the ground that it was irrelevant, immaterial, and not cross examination. The objection was overruled, and the defendant excepted. The witness did not answer, and in his further cross-examination by plaintiff's attorney the following occurred: "Q. Was there anybody there or anything to prevent anybody from getting right onto the cage? A. No, sir; not when I went down. Q. You had no difficulty in doing so? A. No, sir. Q. No bar on the cage? A. There was a bar there. Q. At the time you got on? A. At the time I got into the shaft, to put my tools on the cage there was a bar across the shaft. Q. You took the bar down? A. Yes, sir; I took

the bar down." No further objection was made. Error, based upon said exception is assigned. Section 3285, Revised Statutes 1898, provides that "no exception shall be regarded unless the decision excepted to is material and prejudicial to the substantial rights of the party excepting." Independent of statutory provisions, the same rule has been finally established by the decisions of the courts. 2 Am. and Eng. Enc. Pl. and Prac., p. 500 et seq. As there was relevant evidence, which was not controverted, and which conclusively showed that the plaintiff and Knotts and Smith were not fellow-servants, and that Knotts was negligent, and his negligence was one of the proximate causes of the accident, the plaintiff, as a matter of law, was entitled to recover. In view of this fact, and the testimony of Smith which preceded the exception, and the questions and answers which followed, and to which no objection was made, the exception was not well taken, because the question objected to was not answered; and it is clear that, if it had been, the effect would have been harmless.

6. There are a number of other assignments of error which we have not considered, because they were not presented in the brief in accordance with the tenth rule of this court. Errors which are not so presented are considered as abandoned.

The judgment is affirmed, with costs.

MINER, C. J., and BARTCH, J., concur.